# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| RAHEEM ANDERSON | : | CIVIL ACTION |
| --- | --- | --- |
| v. | : | NO: 14-6747 |
| CITY OF PHILADELPHIA, et al. | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                                                             **JUNE 12, 2015**

Plaintiffs seeking to impose civil rights Section 1983 liability upon a municipality based upon its police officers' alleged false arrest and lack of probable cause must first specifically plead a municipal policy or custom relating to these constitutional claims. Absent the pleading of a policy or custom having a nexus to plaintiff's alleged constitutional claim, the Court cannot rely on broad conclusory allegations of "policies" or "customs" unrelated to the claim. After two attempts, Plaintiff Raheem Anderson does not plead a plausible policy or custom. He instead relies upon inapposite "stop and frisk" allegations and newspaper reports of aggregate settlement payments in all types of unknown cases. Even with our owed deference to the Amended Complaint, we are unable to discern a threshold policy or custom relating to his claims or any facts supporting a plausible claim for "failure to" supervise or train officers which may allow § 1983 supervisory liability. We dismiss his *Monell*[1] claim (Count II) in the accompanying Order.

---

[1] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978); see also *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009)

I. **ALLEGED FACTS**

On February 25, 2014, Philadelphia police detective Paul Perez ("Detective Perez"), arrested Plaintiff Raheem Anderson ("Anderson") based on a June 21, 2013 affidavit of probable cause alleging robbery and conspiracy.[2] (Am. Compl., ¶¶ 8, 10.)

On June 14, 2013, Anderson and a man known as "Mook" approached Arthur Barnes ("Barnes"). (*Id*) Mook demanded money for a bike he sold Barnes. (*Id.*) Alongside Mook, Anderson stated , "give it up, give it up, give it up." (*Id.*) When Barnes stated he did not have any money, Mook punched him, took the bike, and chased him around the corner. (*Id.*) Mook struck Barnes with the bike and stole two cell phones and $100- $140 from Barnes. (*Id.*) Barnes then ran into a "Chinese store" to call police. (*Id.*) Mook and Anderson followed Barnes into the store where Mook again assaulted Barnes. (*Id.*)

After police are involved, Barnes identified Anderson as Mook's associate in a photo array arranged by Detective Perez. (*Id.*) After Barnes identified Anderson, Detective Perez went to the "Chinese store" where he could not locate witnesses and the store told him its video surveillance did not record the incident. (*Id.*)

On February 26, 2014, the Commonwealth charged Anderson with robbery of Barnes and conspiracy to rob Barnes, and a state court set bail at $50,000. Anderson could not post bail. The Commonwealth incarcerated him. (*Id.* ¶¶ 12-13.) The state court twice rescheduled his hearing because Barnes failed to appear in court. (*Id.* ¶¶ 16-17.) On June 18, 2014, after Barnes failed to appear a third time, the Commonwealth withdrew prosecution. (*Id.* ¶ 19.) For unknown reasons, a week later on June 26, 2014, the Commonwealth re-filed the complaint. The state

---

[2] The Amended Complaint refers to Detective Perez as "Paul Perez Paul." (ECF Doc. No. 11, Am. Compl., ¶ 1.) Detective Perez refers to himself as "Paul Perez." (ECF Doc. No. 20, Def.'s Answer.) We refer to him as Detective Perez.

2

court held a preliminary hearing on July 30, 2014. (*Id.* ¶¶ 20, 22.) Following Barnes' testimony, the state court dismissed the case against Anderson for lack of evidence. (*Id.* ¶ 22.)

Anderson sued alleging Detective Perez violated his Fourth Amendment rights (Count I) for which the City is liable as his employer (Count II); Detective Perez violated his rights under Article I, Section 8 of the Pennsylvania Constitution and the City is liable as his employer under common law (Counts III, V); Detective Perez is liable for state law malicious prosecution and the City is liable as his employer under common law (Counts IV, V), and Detective Perez is liable for Pennsylvania torts of false arrest, false imprisonment, invasion of privacy (false light) and intentional infliction of emotional distress and the City is liable as his employer (Count V, VI). The City presently seeks only to dismiss the municipal liability claim under § 1983, *i.e.*, *Monell* claim.

## II. STANDARD OF REVIEW

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure examines the sufficiency of the complaint. *See Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). A plaintiff is obligated to plead "a short and plain statement of the claim." Fed.R.Civ.P. 8(a)(2). The complaint need not contain "detailed factual allegations" but must set forth " 'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for misconduct alleged.'" *Warren Gen. Hosp. v. Amgen*, 643 F. 3d 77, 84 (quoting *Fowler v. UPMC Shadyside*, 587 F.3d 203, 210 (3d Cir. 2009).

We must "accept all the factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Warren Gen. Hosp.*, 643 F.3d at 84 (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002)). We may "consider only the complaint,

3

exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

> The Third Circuit requires a three-part analysis when we evaluate a 12(b)(6) motion:
>
> First, the court must "tak[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Finally, "where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."

*Santiago v. Warminster Township*, 629 F.3d 121, 130 (3d Cir.2010) (quoting *Iqbal*, 556 U.S at 675, 679) (alteration in original). A plaintiff is obligated to plead "a short and plain statement of the claim." Fed.R.Civ.P. 8(a)(2). However, any "pleading offering only 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Fowler*, 587 F.3d at 210 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929). A complaint that does no more than allege a plaintiff's entitlement to relief is insufficient; it must "show" such entitlement with its facts. *Fowler*, 578 F.3d at 210-11 (citing *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234-35 (3d Cir.2008)).

## III. ANALYSIS

Anderson claims municipal liability against the City under 42 U.S.C. § 1983 providing in relevant part:

> Every person who, under color of (state law), subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured.

He alleges : 1) the City "developed, implemented, enforced, and encouraged . . . policies, and/or customs exhibiting deliberate indifference to the Plaintiff's constitutional rights . . ." (Am.

4

Compl., ¶¶ 31, 39); and, 2) the City failed "to properly train, supervise, and discipline its officers." (*Id.* ¶¶ 30, 33, 41.) The City moves to dismiss this *Monell* claim for failing to: 1) allege sufficient facts demonstrating the existence of an impermissible policy or custom; and 2) identify a municipal policymaker responsible for any alleged policy or custom. (ECF Doc. No. 17, Def.'s Mem., 5.) We find Anderson fails to allege sufficient facts to show the existence of a municipal policy or a custom and thus dismiss his *Monell* claim.[3]

### A. Anderson fails to allege sufficient facts to demonstrate a municipal policy or custom.

Under § 1983, a municipality cannot be liable on a theory of *respondeat superior* but may be held liable where its employees violated a citizen's constitutional rights.[4] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978); *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d Cir. 1990). Thus, a municipality may only be liable where the employee's conduct is " 'permitted under its adopted policy or custom.' " *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (quoting *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citation omitted)). Thus, there is a "two-path track to municipal liability under § 1983,

---

[3] The City argues Anderson's *Monell* claim is additionally flawed because he fails to identify a municipal policymaker. Anderson counters citing *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990). Because we find Anderson fails *ab initio* to identify a municipal policy or custom, we need not address the next step as to whether Anderson identifies a municipal policymaker.

[4] Count V is a claim for *respondeat superior* liability against the City. (Am. Compl., ¶¶ 55-56.) As noted above, the City may not be held vicariously liable through *respondeat superior*. *Andrews*, 895 F. 2d at 1480. Because this is not a viable cause of action, as Plaintiff admits in his Opposition, we will dismiss Count V as it applies to the § 1983 claim. (ECF Doc. No. 19-1, Pl.'s Mem. in Opp., 9 ("A municipality is not liable for its employees' constitutional torts under a theory of <u>respondeat superior</u> . . . ." (emphasis in original))).

5

depending on whether the allegation is based on a municipal policy or custom." *Beck*, 89 F.3d at 971.

"Policy is made when a decisionmaker possess[ing] final authority to establish municipal policy with respect to the action issues an official proclamation, policy or edict. A course of conduct is considered to be a custom when, though not authorized by law, such practices of state officials [are] so permanent and well-settled as to virtually constitute law." *Andrews*, 895 F.2d at 1480 (internal citations and quotations omitted) (alteration in original). "Custom requires proof of knowledge and acquiescence by the decisionmaker." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009) (citations omitted). A plaintiff must show that there is a direct causal link between the policy or custom and the alleged constitutional harm. *Knellinger v. York Street Prop. Dev., LP*, 57 F. Supp. 3d 462, 472 (E.D. Pa. 2014). Here, we dismiss Anderson's *Monell* claim as he fails to plausibly allege the existence of a policy or custom that caused the alleged constitutional harm.

Anderson, in his second attempt at stating a claim, alleges "Defendant City of Philadelphia, acting through its Police Department, developed, implemented, enforced, encouraged, and sanctioned de facto policies, and/or customs exhibiting deliberate indifference to the Plaintiff's constitutional rights . . . ." (Am. Compl., ¶¶ 31, 39.) Anderson does not identify the policy or custom. *McTernan*, 564 F.3d at 658 ("To satisfy the pleading standard, [plaintiff] must identify a custom or policy, and specify what exactly that custom or policy was."). Instead, he "simply paraphrases the elements of a *Monell* claim" which is insufficient to withstand a motion to dismiss. *Smith v. McClendon*, No. 14-6358, 2015 WL 2079689, *8 (E.D. Pa. May 5, 2015) (citing *Wood v. Williams*, 568 F. App'x 100, 104 (3d Cir. 2014) and *McTernan*, 564 F.3d at 658.) Anderson fails to specify facts regarding any relevant policy or

custom. He fails to meet the "rigorous standards of culpability and causation" required for municipal liability. *Bd. of Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 405 (1997).

In his briefing, he cites two (2) inapposite fact scenarios. Anderson cites to a class action suit filed against the City for its "stop and frisk practices." (ECF Doc. No. 19-1, Pl.'s Mem., 7-8.) This case is irrelevant for our present analysis as Anderson does not claim a stop and frisk policy or the legality of such a policy. Anderson also cites the *Philadelphia Daily News* reporting the City paid over $70 million to settle lawsuits filed against its police officers. Again, this "report" is insufficient to show a specific policy or custom governing Detective Perez and the conduct in this case. Further, this press-reported settlement value encompasses all alleged police misconduct, including conduct completely unrelated to any constitutional deprivation alleged by Plaintiff. Therefore, the Court cannot segregate any potentially pertinent facts.

Further, Anderson "failed to show that any policymaker was responsible for the policy, or through acquiescence, for any such custom." *Knellinger*, 57 F. Supp. 3d at 472-73 (citing *Andrews*, 895 F.2d at 1480). He fails to allege facts suggesting any municipal decisionmaker had personal knowledge of or involvement in the constitutional deprivation alleged in the Amended Complaint. Moreover, he fails to allege facts which "support, indirectly, such an inference." This failure is "fatal" to his *Monell* claim. *See McTernan*, 564 F.3d at 658-59 (affirming dismissal of *Monell* claim where plaintiff failed to allege "knowledge of such directives by a municipal decisionmaker, such as the Mayor or Police Chief").

### B. Anderson fails to plausibly allege a "failure to" claim.

Anderson also attempts to plead a *Monell* claim alleging the City failed "to adequately supervise and train its officers and agents . . . to properly and adequately monitor and discipline its officers, including [Defendant Paul], and . . . to adequately and properly investigate citizen

7

complaints . . ." (Am. Compl., ¶ 33.) A plaintiff may plead a "failure to" claim where the municipality's failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, — U.S. —, 131 S. Ct. 1350, 1360, (2011) (quoting *Bryan Cnty.*, 520 U.S. at 409).[5] Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan Cnty.*, 520 U.S. at 410.

Anderson fails to allege "similar constitutional violations" to support his "failure to" claim. *Connick*, 131 S. Ct. at 1360. Instead, Anderson relies on conclusory allegations regarding the City's failure to properly supervise, train and monitor its officers. (Am. Compl., ¶¶ 33, 41.) Without identifying any similar constitutional violations, Anderson cannot show the City acted with deliberate indifference to any training deficiency. *See Lawson v. City of Coatesville*, 42 F. Supp. 3d 664, 681 (E.D. Pa. 2014). Therefore, his *Monell* claim under the "failure to" subcategory fails and must be dismissed.

## IV. CONCLUSION

In the accompanying Order, we dismiss Count II of the Amended Complaint with prejudice, as well as any claim for *Monell* liability, as Anderson fails, in his second attempt, to allege sufficient facts of <u>any policy or custom</u> supporting *Monell* liability.[6] Anderson fails to

---

[5] The Court in *Canton* hypothesized a single-incident that would rise to the level of an official government policy for purposes of § 1983. *Canton v. Harris*, 489 U.S. 387 at 390, n. 10, 109 S.Ct. 1197 (1989). However, this single incident liability is only available in a "narrow range of circumstances" which we find not present here. *See Bryan Cnty.*, 520 U.S. at 409.

[6] Count III claims a violation of Article I, § 8 of the Pennsylvania Constitution. (Am. Compl., ¶¶ 45-47.) While Anderson uses "Defendants" in paragraph 46 and "Defendant" in

8

identify a policy or custom attributable to the City contributing to his alleged constitutional violation. Further, he cannot show the City acted with deliberate indifference in an alleged failure to train, supervise, and discipline its officers for misconduct.[7]

---

paragraph 47, we construe this claim to be brought against Detective Perez and the City. Again, the City presents no argument as to why this claim should be dismissed. Thus, to the extent the City is a Defendant on this claim, they will remain a Defendant in Count III.

Count IV is a common law malicious prosecution claim. (Am. Compl., ¶¶ 48-54.) Despite the City's broad request we dismiss all claims against it, there is no discussion of why Count IV should be dismissed. Thus, to the extent Count IV is brought against the City, as we believe it is, the City remains a Defendant as to that count. The City may of course move for summary judgment on Count IV.

Count V only remains to the extent Anderson alleges respondeat superior liability for the state law claims in Counts III, IV and VI.

[7] Even though Anderson has not requested leave to amend upon dismissal of Count II, we are obliged to give him the opportunity to do so unless we find amendment would be inequitable or futile. *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004). Anderson has had two chances to plead his *Monell* claim. Given the deficiencies, we do not find an amendment would be curative. We find an amendment would be futile and dismiss Count II with prejudice.